<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RAHEEM TAYLOR, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-4079 (FSH) |
| | : | |
| v. | : | |
| | : | |
| GEORGE W. HAYMAN, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

RAHEEM TAYLOR, Plaintiff <u>pro se</u>
# 574141
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

**HAYDEN**, District Judge

Plaintiff, Raheem Taylor, a state inmate presently confined at the New Jersey State Prison in Trenton, New Jersey, at the time he submitted this Complaint for filing, seeks to bring this action <u>in forma pauperis</u>.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.  In addition, plaintiff filed a motion for a preliminary injunction.  (Docket entry no. 3).  For the reasons set forth below, the motion for a preliminary injunction will be denied without prejudice at this time.

## I.  BACKGROUND

Plaintiff, Raheem Taylor ("Taylor"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: George W. Hayman, Commissioner for the New Jersey Department of Corrections ("NJDOC"); Donald Mee, Administrator at East Jersey State Prison ("EJSP"); Cindy Sweeney, Associate Administrator at EJSP; Norman B. Knight, state correctional officer ("SCO") at EJSP; Sgt. Marcus at EJSP; Sgt. R. Mitchell at EJSP; SCO P. Sundquist at EJSP; and the United States Postal Service ("USPS") at Rahway, New Jersey.  (Complaint, Caption and ¶¶ 20-27).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

Taylor alleges that defendant SCO Knight has subjected plaintiff to retaliatory reprisals after Taylor filed a grievance

against Knight.  He makes a general allegation that Knight acted through a "pattern of harassment and other adversarial behavior." In particular, Taylor alleges that Knight issued a false disciplinary infraction against plaintiff that resulted in a negative adjustment of Taylor's prison classification status. (Compl., ¶ 29).  Taylor also alleges that defendants Mee and Marcus were placed on notice of Knight's actions but they failed to act in remedying the situation.  (Compl., ¶¶ 31, 32, 34-37).

Taylor next alleges that from July 8, 2009 and continuing to the present time, his incoming legal mail was opened outside of his presence repeatedly so as to suggest that the conduct by defendants was not done by error or inadvertence.  Taylor asserts that this opening of his legal mail violated his attorney/client privilege and operated to chill his confidential and direct communications with counsel.  He also claims that the conduct by defendants violated N.J.S.A. 10A:18-3.4.  (Compl., ¶¶ 41-56). Further, Taylor complains that he "was forced to request that his federally court-appointed attorney withdraw from his case because of defendant's actions in repeatedly opening easily identifiable privileged correspondence addressed to plaintiff by this particular attorney."  (Compl., ¶ 48).

Taylor also alleges that defendants, specifically, defendants Sundquist and Mitchell, interfered with, delayed, censored and obstructed delivery of mail plaintiff addressed to

private individuals and organizations outside of the prison, in particular, individuals and organizations supportive of human rights issues.  (Compl., ¶¶ 57-70).  Taylor claims that his mail was subject to this "unwarranted scrutiny in an effort to pinpoint or identify mail critical of the prison or its employees."  (Compl., ¶ 64).

Finally, Taylor alleges that defendants improperly seized and censored a monthly publication called Prison Legal News to which plaintiff is a subscriber.  Taylor claims that defendants acted to suppress plaintiff's correspondence that may have reflected unfavorably upon prison management.  Taylor also contends that the USPS failed to acknowledge, investigate and deter the defendants' practice of obstructing delivery of plaintiff's mail.  (Compl., ¶¶ 71-81).

Taylor asserts that defendants have violated his First Amendment right to petition the government for redress of grievances and his right of free speech association.  (Compl., Counts I and IV).  He also asserts that he was subjected to retaliation in violation of his First Amendment rights when defendants filed a false disciplinary action against him that resulted in atypical and significant hardship to plaintiff. (Count II).  He further asserts pendent state law claims of harassment, oppression and official misconduct.  (Count III).

Taylor seeks declaratory and injunctive relief.  He also asks for an unspecified amount of compensatory and punitive damages.  (Comp., Prayer for Relief).

On or about August 27, 2010, Taylor filed a motion for a preliminary injunction.  (Docket entry no. 3).  In his motion papers, Taylor acknowledges that he was transferred from the EJSP to the New Jersey State Prison ("NJSP").  He alleges that NJSP officials have continued to censor his outgoing mail.  He also complains that his requests for legal library assistance have been delayed or ignored.  He asks that defendants be enjoined from further interference with his mail and access to the law library.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an

§ 1915A.

    In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94
(2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

    A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

    A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S.
at 93-94 (In a pro se prisoner civil rights complaint, the Court

reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed.R.Civ.P.</u> 8(a)(2).[1]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." <u>Fed.R.Civ.P.</u> 8(d).

cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

(2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.   ANALYSIS

A.   Interference with the Mail

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's

constitutional right to send and receive mail may be restricted only for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.  See Jones v. Brown, 461 F.3d 353 (3d Cir. 2006), cert. denied, 127 S. Ct. 1822 (2007)(holding that the legal mail policy of state prisons in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff); Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995)("[A] pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court."), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  See, also, Antonelli v. Sheahan, 81 F.3d

1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

Allegations of inspection or interference with an inmate's legal mail also may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case.  See Wolff v. McDonnell, 418 U.S. 539, 575 (1974) (upholding regulation permitting legal mail to be opened and inspected for contraband, but not read, in the presence of the inmate).

Here, Taylor alleges that his outgoing mail is censored and delayed and that his legal mail is frequently opened outside of his presence.  However, he does not allege any actual injury from the alleged interference.  More pertinently, it appears that Taylor is concerned that his outgoing mail takes several days to be delivered because it is being scrutinized, but he does not allege that his mail is not being sent.  Consequently, as a matter of law, Taylor has not shown a constitutional violation as he has not demonstrated actual injury with respect to the alleged interference with his outgoing mail.  Therefore, this claim of interference with outgoing mail will be dismissed for failure to state a claim of a cognizable federal constitutional deprivation.

As to his legal mail, Taylor appears to allege that defendants at EJSP had a pattern or practice of opening his properly marked legal mail.  A prison's systematic interference with an inmate's mail may chill his expression.  See Jones, 461 F.3d at 358-59 (holding that a "pattern and practice of opening

properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech"). However, Taylor does not articulate a specific and actual injury other than the generic allegation that his legal mail is opened outside of his presence. He does allege that he discontinued his counsel's services of his own accord when he found out his mail had been opened. Taylor does not allege that his counsel's representation was compromised or that counsel withdrew from representing plaintiff as a result of the alleged interference with Taylor's legal mail. Nevertheless, Taylor's allegation that the opening of his legal mail was frequent and was targeted as to him specifically and not as a matter of general policy is sufficient at this early stage to support a claim of a constitutional violation at this time. Accordingly, this Court is constrained to allow this claim concerning plaintiff's legal mail to proceed at this time.

B.   United States Postal Service

The United States may not be sued without its consent and the existence of consent is a prerequisite for jurisdiction. United States v. Mitchell, 463 U.S. 206 (1983). The terms of the United States' consent set the parameters for the court's jurisdiction to entertain the suit. Id. (citing, United States v. Dalm, 494 U.S. 596, 608 (1990)). Absent a waiver of sovereign immunity, the Federal Government is immune from law suits. United States v. Sherwood, 312 U.S. 584, 586 (1941). The

conditional sovereign immunity of the United States extends to its branches and agencies, "including the Postal Service."  Id. (citing, Franchise Tax Bd. v. United States Postal Service, 467 U.S. 512, 517 (1984)).  Congress has waived the sovereign immunity of certain federal entities from the times of their inceptions and when such waivers occur, they should be liberally construed by courts.  Franchise Tax Bd., 467 U.S. at 517-18.

Pursuant to section 401 of the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. §§ 101 et seq., Postal Services has the power "to sue and be sued in its official name."  39 U.S.C. § 401(1).  This section of the PRA has been interpreted as a broad, but not unlimited, consent on the part of the United States to suits against Postal Services.  Loeffler v. Frank, 486 U.S. 549, 554 (1988).  Congress included this clause in order for Postal Services to be "run more like a business than had its predecessor, the Post Office Department."  Franchise Tax Bd., 467 U.S. at 520.  The Supreme Court has held that by "launching the Postal Service into the commercial world," and by including the "sue-and-be-sued clause in its charter," Congress has "cast off the Services' cloak of sovereignty and given it the status of a private commercial enterprise."  Loeffler, 486 U.S. at 556.  The Supreme Court has addressed this issue and stated:

> [I]f the general authority to 'sue and be sued' is to be
> dilimited by implied exceptions, it must be clearly shown
> that certain types of suits are not consistent with
> statutory or constitutional scheme, that an implied
> restriction of the general authority is necessary to avoid

14

> grave interference with the performance of a governmental
> function, or that for other reasons it was plainly the
> purpose of Congress to use the 'sue and be sued' clause in a
> narrow sense.  In the absence of such showing, it must be
> presumed when Congress launched a governmental agency into
> the commercial world and endowed it with authority to 'sue
> and be sued' that agency is not less amenable to judicial
> process than a private enterprise under like circumstances
> would be.

Franchise Tax Bd., 467 U.S. at 517 (quoting, FHA v. Burr, 309

U.S. 242, 245 (1940)).  Postal Services' immunity is therefore

dependent on the type of suit brought against it.  Loeffler, 486

U.S. at 554.

Here, Taylor asserts a claim that his constitutional rights

under the First Amendment were violated when his mail, namely,

his receipt of the Prison Legal News monthly publication, was

seized by prison officials.  Taylor claims that the USPS should

have investigated and acted to deter the prison's obstruction of

delivery of his mail.

This Court finds no claim of a constitutional deprivation

based on this broad allegation against the USPS.  Taylor alleges

nothing more than a mere conclusory statement of liability with

no factual support to meet the pleading threshold as set forth in

Iqbal, 129 S.Ct. at 1949-50.  Therefore, Taylor fails to satisfy

Iqbal's plausibility standard and the Complaint will be dismissed

with prejudice accordingly, as against the USPS, for failure to

state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1).

C.   <u>Access to Law Library Claim</u>

Taylor also appears to complain that his access to the law library has been denied or delayed in violation of his First and Fourteenth Amendment rights after he was transferred to NJSP. Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[3]  The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental

---

[3]  The right of access to the courts is an aspect of the First Amendment right to petition.  <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

16

constitutional rights to the Courts." Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(quoting Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original). Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000). But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to

17

counsel has no alternative right to access to a law library);
Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998)
(same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385,
**4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury" by hindering his efforts to pursue such
a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55
(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).
"He might show, for example, that a complaint he prepared was
dismissed for failure to satisfy some technical requirement
which, because of deficiencies in the prison's legal assistance
facilities, he could not have known.  Or that he had suffered
arguably actionable harm that he wished to bring before the
courts, but was so stymied by inadequacies of the law library
that he was unable to file even a complaint." Lewis, 518 U.S. at
351.

Here, Taylor fails to allege any actual injury as a result
of the alleged denial of access to the law library.  He does not
allege that he was unable to file this or any other complaint in
the courts, and in fact, he has not been limited in filing the
instant action or his motion papers related to this action.  He
alleges no injury of any kind related to the alleged delay in
receiving law library assistance.  Consequently, the allegations
in the Complaint are too conclusory to show a denial of court

18

access via access to the prison law library sufficient to rise to the level of a constitutional deprivation under the <u>Iqbal</u> pleading standard.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation .... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  <u>Iqbal</u>, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).

Furthermore, Taylor does not articulate how the alleged denial of access to the law library has hindered his efforts to either pursue this claim or defend himself in any pending state proceedings.  Therefore, his claim alleging denial of access to the courts based on an alleged failure to provide access to the law library will be dismissed without prejudice for failure to state a claim at this time.[4]

---

[4]  Taylor may seek leave to amend his Complaint to allege facts to show actual injury.  To the extent that plaintiff chooses to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Taylor should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id</u>.

D.  Disciplinary Charges

     Taylor also alleges that defendant Knight filed a false

disciplinary infraction against plaintiff as part of a pattern of

harassment.  The act of filing false disciplinary charges does

not itself violate a prisoner's constitutional rights.  See

Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding

that "the mere filing of [a false] charge itself" does not

constitute a cognizable claim under § 1983 so long as the inmate

"was granted a hearing, and had the opportunity to rebut the

unfounded or false charges"), cert. denied, 485 U.S. 982 (1988);

Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding

that so long as prison officials provide a prisoner with the

procedural requirements outlined in Wolff v. McDonnell, 418 U.S.

539, 558 (1974),[5] then the prisoner has not suffered a

constitutional violation).  See also Creter v. Arvonio, No. 92-

4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v.

Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30,

1988)(determining that "the alleged knowing falsity of the charge

_____

     [5]   In Wolff v. McDonnell, the Supreme Court set forth the
requirements of due process in prison disciplinary hearings.  An
inmate is entitled to (1) written notice of the charges and no
less than 24 hours to marshal the facts and prepare a defense for
an appearance at the disciplinary hearing; (2) a written
statement by the fact finder as to the evidence relied on and the
reasons for the disciplinary action; and (3) an opportunity "to
call witnesses and present documentary evidence in his defense
when to do so will not be unduly hazardous to institutional
safety or correctional goals."  Wolff, 418 U.S. at 563-71.  In
this case, there are no allegations that Plaintiff was denied
these due process requirements.

[does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

In this case, Taylor does not allege that he was denied an institutional disciplinary hearing or an opportunity to present evidence to refute the charges.  Consequently, there are no factual allegations of wrongdoing that would rise to the level of a constitutional deprivation in order to support a claim of false disciplinary charges, and such claim will be dismissed, as against all named defendants, for failure to state a claim upon which relief may be granted.

E.   Retaliation Claim

It also appears that Taylor is asserting a claim that defendant Knight wrongly retaliated against plaintiff by filing a false disciplinary charge against plaintiff after plaintiff had filed a grievance against Knight.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state

actor's decision to take adverse action.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229
F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125
F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

Based on the allegations set forth in the Complaint, if
true, Taylor may be able to support a claim of retaliation.  He
alleges that after he filed a grievance against defendant Knight,
Knight falsely charged plaintiff with a disciplinary infraction
that purportedly were not true.

A prisoner's ability to file grievances and lawsuits against
prison officials is a constitutionally protected activity for
purposes of a retaliation claim.  See Milhouse v. Carlson, 652
F.2d 371, 373-74 (3d Cir. 1981)(retaliation for exercising right
to petition for redress of grievances states a cause of action
for damages under the constitution); Woods v. Smith, 60 F.3d
1161, 1165 (5th Cir. 1995)(prison officials may not retaliate
against an inmate for complaining about a guard's misconduct),
cert. denied, 516 U.S. 1084 (1996).  Therefore, because plaintiff
appears to allege that the retaliation was the result of his
filing grievances, he appears to meet the requisite elements of a
retaliation claim.  Namely, Taylor has alleged (1) a
constitutionally protected activity, (2) that he was subjected to

adverse action by defendant, <u>i.e.</u>, disciplinary action, and (3) that his grievance against Knight was the motivating force in the Knight's decision to take adverse action against plaintiff. Accordingly, the Court will allow this claim to proceed at this time.

To the extent that Taylor's state law claims of harassment, oppression and official misconduct are related to his federal claim asserting a First Amendment violation of retaliation, this Court will exercise supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a).

F.   <u>Free Speech and Association Infringement Claim</u>

Taylor also complains that defendants have infringed his right to free speech and association as guaranteed under the First Amendment by seizing and/or censoring his receipt of a monthly publication called Prison Legal News.  "In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974)(evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication).  <u>See</u> <u>also</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989)(evaluating regulations governing receipt of subscription publications by federal prison inmates).  <u>Cf</u>.,

Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460
(1989)(there is no substantive due process right to "unfettered
visitation").  Thus, to the extent not inconsistent with their
status as prisoners or with legitimate penological objectives,
inmates have a First Amendment right to communicate with
"friends, relatives, attorneys, and public officials by means of
visits, correspondence, and telephone calls."  Owens-El v.
Robinson, 442 F. Supp. 1368, 1386 (W.D.Pa.)(citation omitted),
supplemented and finalized, 457 F. Supp. 984 (W.D.Pa. 1978),
aff'd in part and vacated in part on other grounds sub nom.,
Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir.
1979).

Nevertheless, "[t]he very object of imprisonment is
confinement.  Many of the liberties and privileges enjoyed by
other citizens must be surrendered by the prisoner.  An inmate
does not retain rights inconsistent with proper incarceration.
And, as our cases have established, freedom of association is
among the rights least compatible with incarceration.  Some
curtailment of that freedom must be expected in the prison
context."  Overton v. Bazzetta, 539 U.S. 126, 131 (2003).
Free citizens possess a coextensive First Amendment right to
reach out to those who are incarcerated.  Thornburgh, 490 U.S. at
410 n. 9.

When a prison regulation or practice impinges on inmates' or
free citizens' speech and association rights, "the regulation is

24

valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.  The Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue.

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. ...  Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.  Moreover, the governmental objective must be a legitimate and neutral one....
>
> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates. ...
>
> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. ...
>
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.  By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test. ...

Turner, 482 U.S. at 89-90 (citations omitted).

Here, Taylor asserts that defendants violated his First Amendment rights by denying him access to the monthly newsletter or publication called Prison Legal News.  The Supreme Court recently determined that a Pennsylvania prison policy that denied newspapers, magazines, and photographs to a group of specially dangerous and recalcitrant inmates did not violate the First Amendment.  See Beard v. Banks, 548 U.S. 521 (2006)(holding that

25

ban on all newspapers, magazines, and personal photographs for inmates housed in long term segregation unit does not violate First Amendment because it is rationally related to rehabilitation).  The case arose in the context of the defendants' motion for summary judgment, which "set forth several justifications for the prison's policy, including the need to motivate better behavior on the part of particularly difficult prisoners."  Id. at 530.  Noting that "prison officials have imposed the deprivation at issue only upon ... the 40 most intractable inmates in the Commonwealth [and] reached an experience-based conclusion that the polic[y] help[s] to further legitimate prison objectives," id. at 533, the Supreme Court found that, on the basis of the record before the District Court, summary judgment in favor of the government was warranted.  Id. at 534-35.

Unlike the procedural posture in Beard, this Court is analyzing whether sua sponte dismissal of Taylor's First Amendment claim is warranted here.  This Court finds that, given the absence of a record showing the legitimate penological interests served by the alleged denial of access to the Prison Legal News monthly publication, sua sponte dismissal is not warranted.  See Wolf v. Ashcroft, 297 F.3d 305 (3d Cir. 2002)(reversing and remanding dismissal of prisoner's challenge to rule prohibiting R rated movies because the connection between the policy and the government interest was not obvious);

Dreibelbis v. Marks, 675 F.2d 579 (3d Cir. 1982)(reversing sua sponte dismissal of First Amendment claim because at the very least a record must be made as to the state's justifications). This Court will accordingly allow this First Amendment claim to proceed at this time.

G.  Motion for Preliminary Injunction

To secure the extraordinary relief of a preliminary injunction or temporary restraining order ("TRO"), plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990).  The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Taylor's request for a preliminary injunction pertains to what he alleges are ongoing violations regarding his outgoing mail and access to the law library while confined at the NJSP. With the exception of defendant George Hayman, NJDOC Commissioner, all of the named defendants in this action are employed at EJSP, where the principal claims of retaliation, interference with the mail and other First Amendment violations occurred.

This Court finds that Taylor does not satisfy the first two factors necessary for issuance of a preliminary injunction. Namely, Taylor is unable to show likelihood of success on the merits because his outgoing mail claim and access to the law library claim are being dismissed without prejudice for failure to state a claim at this time.  In addition, Taylor does not show irreparable harm.  Indeed, he fails to allege any actual injury with respect to these claims for relief.  Therefore, where Taylor cannot show all four factors necessary for issuance of a preliminary injunction, his motion must be denied at this time.

IV.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety as against the defendant United States Postal Service, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Further, plaintiff's claims asserting interference with his outgoing mail, access to the law

library, and false disciplinary charges, will be dismissed
without prejudice for failure to state a claim at this time.  His
claims asserting First Amendment violations of retaliation,
interference with his legal mail, and infringement of free speech
and association related to receipt of a monthly newsletter
regarding prison legal news, will be allowed to proceed at this
time.  Finally, Taylor's motion for a preliminary injunction will
be denied because he fails to establish the four requisite
factors warranting such relief.  An appropriate order follows.


s/ Faith S. Hochberg
FAITH S. HOCHBERG
United States District Judge

Dated: February 23, 2011